1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ART SWOPE,                        Case No.  1:23-cv-01412-SKO (HC)

12              Petitioner,            **ORDER DENYING PETITION FOR WRIT**
                                       **OF HABEAS CORPUS**
13        v.
                                       **ORDER DIRECTING CLERK OF COURT**
14                                     **TO ENTER JUDGMENT AND CLOSE**
     LEANNA LUNDY, Acting Warden,      **CASE**
15
              Respondent.             **ORDER DECLINING TO ISSUE**
16                                     **CERTIFICATE OF APPEALABILITY**

17

18        Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  All parties having consented to the jurisdiction of the magistrate

20   judge, this matter was referred to the undersigned on November 16, 2023, for all further

21   proceedings, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 10.)

22   As discussed below, the Court finds the petition to be without merit, and the petition will be

23   **DENIED.**

24   **I.      PROCEDURAL HISTORY**

25        On April 27, 2018, a Kern County jury found Petitioner guilty of attempting to escape

26   from jail with use of force (Cal. Penal Code § 4532(b)(2)).  (Doc. 12-1 at 1.)  On August 21,

27   2018, Petitioner was sentenced to a term of 12 years to be served consecutively to his prior

28   robbery sentence.  (Doc. 12-1 at 1.)

1   Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

2   DCA"). On October 18, 2021, the Fifth DCA affirmed the judgment. People v. Swope, 2021 WL

3   4839224 (Cal.Ct.App. 2021). Petitioner then petitioned for review in the California Supreme

4   Court. (Doc. 12-3.) On December 22, 2021, the California Supreme Court summarily denied

5   review. (Doc. 12-4.) Next, Petitioner filed habeas petitions at all three levels of the state courts.

6   (Doc. 12-5 to 12-14.) The final petition was denied by the California Supreme Court on August

7   9, 2023. (Doc. 12-14.)

8   On September 27, 2023, Petitioner filed a petition for writ of habeas corpus in this Court.

9   (Doc. 1.) Respondent filed an answer on April 29, 2024. (Doc. 31.) On July 8, 2024, Petitioner

10  filed a traverse. (Doc. 44.)

11  **II.    FACTUAL BACKGROUND[1]**

12  On June 30, 2016, Petitioner was sentenced to a lengthy prison term in Kern Superior

13  Court. When the proceedings concluded, Petitioner was taken from the courtroom to the central

14  receiving facility (CRF). The CRF is a jail facility connected to the superior court building in

15  Bakersfield.

16  Having been sentenced that morning, Petitioner was scheduled to be transported to

17  another jail en route to Wasco State Prison. Upon returning to the CRF, Petitioner asked a

18  sheriff's deputy to loosen his leg restraints. The deputy examined the restraints and agreed the

19  shackle around Petitioner's right ankle was too tight. The deputy later testified, "I took off one of

20  the shackles and replaced it with a large zip tie, a thick zip tie, and then applied the ankle

21  restrain[t] to that. So the zip tie was secured around his ankle and then the metal one was secured

22  to that."

23  Following the adjustment to his restraints, Petitioner lined up with a group of inmates

24  waiting to board a 40-foot bus parked in an enclosed area of the CRF known as the "bus barn." A

25  closed "roll-up garage door" separated the interior of the bus barn from an outside parking lot,

26

27  _____
[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§
28  2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts in Swope, 2021
WL 4839224. See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

1   which was a public area. Two deputies from the Transportation Department of the Kern County

2   Sheriff's Office, including Deputy Martin Rodriguez, oversaw the boarding process.

3        Once all inmates were thought to be on board, the garage door was opened and the bus

4   backed out into the parking lot. Deputy Rodriguez soon noticed a pair of jail-issued pants on the

5   floor of the garage. Puzzled, the deputy told his partner to "just pull the bus forward about five

6   feet and just wait and see what happens." Shortly thereafter, a disheveled looking man

7   (Petitioner) appeared behind the vehicle and began walking toward Truxtun Avenue.

8        Deputy Rodriguez initially thought Petitioner was a homeless person because he was "so

9   dirty" and covered in what was later determined to be motor oil. Another reason was Petitioner's

10  gait. The deputy knew that standard leg restraints force inmates to "shuffle" along in "little short[]

11  step[s]," but Petitioner was "walking normal." Petitioner also swung his left arm as he walked,

12  which a properly restrained inmate could not do because of the handcuffs. Despite those

13  circumstances, the deputy felt "something didn't add up" and followed Petitioner as he moved

14  toward the intersection of Truxtun and L Street.

15       Petitioner stopped to talk to a pedestrian, which allowed Deputy Rodriguez to catch up to

16  him and see a pair of handcuffs attached to his right wrist. Deputy Rodriguez tackled Petitioner to

17  the ground, at which point a struggle allegedly ensued. After approximately 30 or 40 seconds,

18  Petitioner gave up and allowed himself to be escorted back to the CRF.

19       The incident prompted a search of the bus barn. In addition to the discarded jail pants,

20  deputies found a razor blade and a severed zip tie. A review of video footage captured by a

21  surveillance camera showed Petitioner sneaking away from the line of inmates and crawling

22  under the back of the bus.

23       Later in the day, Petitioner waived his right to remain silent and gave a recorded

24  confession. Petitioner admitted possessing the razor blade but denied using it during the incident.

25  He claimed to have used a "sharp hinge" on the underside of the bus to cut through the zip tie

26  around his leg. Petitioner further explained how, with great effort, he had squeezed his left hand

27  out of the handcuffs. He then removed his brown inmate pants, which left him wearing a white

28  shirt and "an extra pair of [blue] pants." Those acts occurred before the bus pulled out of the bus

1  barn.

2        At trial, the People's case-in-chief established the facts summarized above. The jury saw

3  video recordings of the incident from two different angles, and it heard an audio recording of

4  Petitioner's confession. The defense rested without presenting any evidence.

5        After the close of evidence, the People moved to dismiss count 1. The motion was

6  granted. The People then elected to base count 2 on a theory of attempted escape. The jury

7  returned a guilty verdict, and Petitioner subsequently admitted the prior strike allegations.

8  The defense unsuccessfully moved for a new trial on grounds of insufficient evidence and

9  instructional error. The trial court sentenced Petitioner to the upper term of six years in prison,

10  which was doubled to 12 years because of a prior strike. As required by statute, the term was

11  ordered to be served consecutively to the sentence imposed in case No. BF159035A. (§ 4532,

12  subd. (b)(2).)

13  **III.   DISCUSSION**

14        A.   Jurisdiction

15        Relief by way of a petition for writ of habeas corpus extends to a person in custody

16  pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

17  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

18  529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as

19  guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern

20  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §

21  2254(a); 28 U.S.C.§ 2241(d).

22        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

23  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

24  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

25  filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA

26  and is therefore governed by its provisions.

27        B.   Legal Standard of Review

28        A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

4

the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is

possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)).  Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118.  In other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA.  Congress "meant" this standard to be "difficult to meet." Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  The federal habeas court must give "substantial deference" to the state court. Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).  If "'[r]easonable minds reviewing the record might disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in

1    original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

2         To determine whether habeas relief is available under § 2254(d), the federal court looks to

3    the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

4    Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019)

5    (en banc).  "[A]lthough we independently review the record, we still defer to the state court's

6    ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

7         The prejudicial impact of any constitutional error is assessed by asking whether the error

8    had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

9    Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

10   (holding that the Brecht standard applies whether or not the state court recognized the error and

11   reviewed it for harmlessness).

12        C.    Review of Petition

13        Petitioner claims appellate counsel was ineffective in violation of his constitutional rights.

14   He claims appellate counsel failed to raise and argue a unanimity issue with respect to his "two

15   defenses"; appellate counsel agreed with the prosecution that escape was an ongoing offense

16   thereby undermining Petitioner's defense that the escape was complete at the time he escaped the

17   bus garage, and therefore, the physical struggle with the deputy was erroneously admitted;

18   appellate counsel filed a petition for review against Petitioner's wishes whereas Petitioner sought

19   to file a *pro se* petition for review; and appellate counsel argued a frivolous claim.  Petitioner also

20   claims he was convicted on an illegal theory and that his appeal was denied on a factual error.

21             1.   Alleged Ineffective Assistance of Appellate Counsel

22        As Respondent points out, the gravamen of Petitioner's complaints center around the use

23   of force or violence in his escape which heightened the penalty imposed.  Petitioner assigns

24   various errors based on two separate instances of force: one involving the use of force on a zip-tie

25   restraint while Petitioner was under a bus; and another involving the use of force in resisting

26   capture by a deputy.  On appeal, appellate counsel claimed the trial court erred by failing to

27   instruct the jurors on the requirement of unanimity as to the factual basis for conviction.  The

28   Court will set forth the appellate opinion, since many of Petitioner's arguments and points of

1  contention were addressed by the court:

2      **I. Alleged Instructional Error**

3          **A. Additional Background**

4  Most criminal attempts are governed by the general attempt statutes, i.e., sections
   21a and 664. (*People v. Medina* (2007) 41 Cal.4th 685, 696–697, 61 Cal.Rptr.3d
5  677, 161 P.3d 187.) The crime of attempted escape is an exception. Section 4532
   prohibits an attempted or completed escape from a jail and imposes the same
6  punishment for both crimes. (*Id.*, subds. (b)(1), (2).) A heightened penalty is
   imposed if either offense is committed "by force or violence." (*Id.*, subd. (b)(2).)
7

8  The phrase "force or violence" has been judicially interpreted to mean "'any
   wrongful application of physical force against property or the person of another.'"
9  (*People v. Bravot* (1986) 183 Cal.App.3d 93, 97, 227 Cal.Rptr. 810.) In *People v.
   White* (1988) 202 Cal.App.3d 862, 249 Cal.Rptr. 165, a finding of force against
10 property was upheld based on the inmate's use of a mop handle to make a hole in
   the ceiling above his cell. (*Id.* at pp. 864, 867, 249 Cal.Rptr. 165.) More recently,
11 in *People v. Kunes* (2014) 231 Cal.App.4th 1438, 180 Cal.Rptr.3d 896 (*Kunes*), an
   inmate who had been released on home detention was held to have violated section
12 4532, subdivision (b)(2), by using a pair of scissors to remove a jail-issued GPS
   monitoring device from around his ankle. (*Kunes*, at p. 1444, 180 Cal.Rptr.3d
13 896.) The *Kunes* opinion explains that only slight force is required. (*Ibid.*; accord,
   *White, supra*, at pp. 866–867, 249 Cal.Rptr. 165; *People v. Lozano* (1987) 192
14 Cal.App.3d 618, 627, 237 Cal.Rptr. 612.)

15 "Although the term 'escape' is not statutorily defined, case law has defined
   'escape' as the unauthorized or "'unlawful departure of a prisoner from the limits
16 of his custody."'" (*People v. Bailey* (2012) 54 Cal.4th 740, 748–749, 143
   Cal.Rptr.3d 647, 279 P.3d 1120, quoting *People v. Quijada* (1921) 53 Cal.App.
17 39, 41, 199 P. 854.) It is generally accepted that an escape has occurred, or at least
   is in progress, by the time the inmate breaches "the outer limits of the prison [or
18 jail] property." (*People v. Lavaie* (1999) 70 Cal.App.4th 456, 461, 82 Cal.Rptr.2d
   719; see *Bailey*, at p. 756, 143 Cal.Rptr.3d 647, 279 P.3d 1120 (conc. opn. of
19 Werdegar, J.) [discussing "three older decisions" wherein "the evidence showed a
   completed escape even though the defendant had not reached the limits of the
20 correctional facility's *property or grounds* when apprehended"].) In *People v.
   Bigelow* (1984) 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994 (*Bigelow*), escape
21 was construed as a continuing act for purposes of section 190.2, subdivision (a)(5),
   i.e., murder committed for the purpose of "perfecting or attempting to perfect, an
22 escape from lawful custody." The escape is "'perfected'" once the defendant "has
   departed the confines of the prison facility *and* reached a place of temporary safety
23 outside the confines of the prison." (*Bigelow*, at p. 754, 209 Cal.Rptr. 328, 691
   P.2d 994, italics added.)

24 In this case, defendant's trial counsel argued the attempt to escape was successful
   the moment defendant exited the bus barn and reached the outside parking lot.
25 Based on this theory of a "perfected" escape, counsel argued the alleged struggle
   with Deputy Rodriguez on Truxtun Avenue constituted resisting arrest but not
26 escape by force or violence. Although *Bigelow* was not cited, the trial court
   rejected the defense argument and concluded escape is a continuing offense until
27 the inmate reaches a place of temporary safety. In its discussion of the issue, the
   trial court reminded the prosecutor, "[T]he jury has got to agree unanimously
28 which facts they are relying on."

The prosecutor later moved to dismiss count 1 and elected to argue a theory of *attempted* escape as the basis for liability under section 4532, subdivision (b)(2). This was described as "a tactical decision made by the People in light of some of the discussions ... regarding issues with sending unanimity on a factual basis [*sic*] ...." The court continued, "And, with that, I don't believe either side is requesting unanimity on that from the People's point of view or the defense." Defense counsel agreed, and the trial court did not provide a unanimity instruction to the jury.

Earlier in the trial, citing the "very unique" circumstance of the incident occurring "at the courthouse," the prosecutor had argued (to the trial court) that defendant's *attempt* to escape should be viewed as a continuing offense despite his movement beyond the physical confines of the jail. The prosecutor reasserted this position in closing argument to the jury. The argument focused on the element of force or violence: "The shackles were important because one of the issues as I think you'll see there's a lesser included without force.... [¶] [Y]ou don't have to agree [on when defendant used force] because this is one big story from 8:30 in the morning until close to noon when he's tackled by Deputy Rodriguez."

The prosecutor initially emphasized defendant's actions while inside of the bus barn. For example: "[H]e's fighting to get his pants off; fighting to slip shackles. There's force. He's fighting to get the plastic zip tie cut and he told you he cuts the zip tie. Whether it was with a razor blade or something sharp under the bus, it doesn't matter.... [¶] ... You saw him crawl [under] the bus. Saw him cut the zip tie. And here's your attempt right here. This is where it starts. [¶] ... Shimmying his pants or shimmying and slipping cuffs, cutting cuffs, these are all force."

As the argument progressed, the focus shifted to the incident on Truxtun Avenue: "You can find force or violence at any point from the beginning of the story to the end of the story but there is force and there is violence at the end of the story. After Deputy Martin Rodriguez tackles him, he explains to you that he's using body weight to buck him off. He's elbowing him. He's making physical contact with his body."

The prosecutor concluded by restating the dual theories of liability: "Force or violence is to wrongfully use physical force against property of a person. Now, remember, that's a K[ern County Sheriff's Office] zip tie. I understand it might just cost a penny but that's County property that he used force against to assist in his attempted escape. And he used violence against the person who attempted to stop him or did stop him."

In the defense closing argument, trial counsel argued the struggle with Deputy Rodriguez on Truxtun Avenue was irrelevant because "[i]f you're an inmate and you're outside the bus barn, you're an escapee." In other words, "You can't attempt to escape once you've escaped." Counsel also briefly argued any force defendant used against property before exiting the bus barn was insufficient. While this rationale would impliedly suggest defendant committed the lesser offense of attempted escape without force or violence (§ 4532, subd. (b)(1)), counsel essentially argued that a completed escape precludes liability for attempted escape. However, the jury was properly instructed that "defendant may be guilty of attempt even if you conclude that the escape was actually completed." (See further discussion, *post*.)

### B. Legal Analysis

Defendant's appellate counsel does not dispute the prosecution's theory of the

attempted escape being a continuing offense even though defendant was apprehended on a public street. The opening brief assigns error to the lack of a unanimity instruction because of the People's reliance on multiple discrete acts to prove the element of force or violence. Since the issue has not been raised, we do not address the merits of the prosecution's continuing offense theory. However, we note that "[a] person charged with an attempted crime may be convicted of such even if the evidence at trial shows that the crime was completed." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605, 149 Cal.Rptr.3d 815, citing § 663; accord, *People v. Robins* (2020) 44 Cal.App.5th 413, 420, 257 Cal.Rptr.3d 663.) "Further, evidence tending to prove that the crime was completed, even though not absolute proof of the crime of attempt, gives rise to a reasonable inference that the perpetrator intended to commit that crime." (*People v. Rundle* (2008) 43 Cal.4th 76, 138, fn. 28, 74 Cal.Rptr.3d 454, 180 P.3d 224, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, 87 Cal.Rptr.3d 209, 198 P.3d 11.) Therefore, the fact defendant may have succeeded in escaping from jail does not preclude the conviction of attempted escape. (§ 663.)

As for the issue presented, "'if one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act."'" (*People v. Brown* (2017) 11 Cal.App.5th 332, 341, 217 Cal.Rptr.3d 589.) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed ..., the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132, 108 Cal.Rptr.2d 436, 25 P.3d 641.) If the circumstances warrant a unanimity instruction, the trial court has a sua sponte duty to give one. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199, 96 Cal.Rptr.2d 1, 998 P.2d 969.)

Simply stated, "[a] unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count." (*People v. Grimes* (2016) 1 Cal.5th 698, 727, 207 Cal.Rptr.3d 1, 378 P.3d 320.) We conclude that regardless of whether the evidence tended to show two distinct crimes, defendant's claim fails for lack of prejudice. "There is a split of opinion in the appellate courts as to whether the *Chapman* standard or *Watson* standard for harmless error applies in a unanimity instruction case[,]" but here the alleged error is harmless under either standard. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576, 159 Cal.Rptr.3d 35, referencing *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 and *People v. Watson* (1956) 46 Cal.2d 818, 299 P.2d 243.)

When a defendant relies on "the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (*People v. Hernandez, supra*, 217 Cal.App.4th at p. 577, 159 Cal.Rptr.3d 35.) Likewise, "[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853, 42 Cal.Rptr.2d 798.) For example, in *People v. Parsons* (1984) 156 Cal.App.3d 1165, 203 Cal.Rptr. 412 a unanimity error was deemed harmless because "appellant was unable to proffer any defense, but merely put the People to their proof." (*Id*. at p. 1174, 203 Cal.Rptr. 412.)

The evidence of defendant's attempted escape was uncontroverted. As discussed,

the jury saw a video of him ducking out of line, scurrying toward the rear wheels of the bus, and crawling underneath the vehicle. Those actions, combined with the statements made in his recorded confession, eliminated any reasonable doubt as to defendant's intent to unlawfully depart from the physical limits of custody. (See *People v. Bailey, supra*, 54 Cal.4th at p. 749, 143 Cal.Rptr.3d 647, 279 P.3d 1120 ["Unlike escape, attempt to escape requires a specific intent to escape"].) Furthermore, as appellate counsel concedes "[t]here was evidence [defendant] attempted to escape by force or violence when he cut the zip tie that secured his legs."

The facts on the issue of force are analogous to those in *Kunes*, where the appellant used a pair of scissors to remove a GPS monitoring device from around his ankle. (*Kunes, supra*, 231 Cal.App.4th at p. 1444, 180 Cal.Rptr.3d 896.) Defendant's admitted use of a "sharp hinge" to break the zip tie attached to his ankle established the requisite force against property. Defendant admitted he "cut it off underneath the bus," which must have occurred prior to him exiting the bus barn since the broken zip tie was found on the floor of the garage along with the discarded jail pants and razor. Therefore, even if defendant's trial counsel was correct about the escape being accomplished when the bus backed out of the enclosure, a properly instructed jury would have undoubtedly found defendant's conduct while inside the garage established the elements of attempted escape by force. (Cf. *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188, 7 Cal.Rptr.3d 483 [lack of unanimity instruction on gun possession charge held harmless given appellant's "damning admission" of owning firearms]; see generally *People v. Russo, supra*, 25 Cal.4th at p. 1132, 108 Cal.Rptr.2d 436, 25 P.3d 641 [the "requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed' "].)

Swope, 2021 WL 4839224, at *2-5.

In addition, on appeal, Petitioner moved to discharge and replace appointed counsel. Petitioner's motion was denied as follows:

**III. Motion for Substitute Counsel**

Defendant is currently represented by appointed counsel. He has filed a motion to "dismiss," i.e., discharge, his appointed counsel "and replace him with competent counsel." Defendant complains of the attorney's failure to pursue what defendant believes are meritorious theories of reversible error.

"'The general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case applies to the filing of *pro se* documents on appeal.'" (*People v. Clark* (1992) 3 Cal.4th 41, 173, 10 Cal.Rptr.2d 554, 833 P.2d 561.) However, an appellate court "will accept and consider pro se motions regarding representation, including requests for new counsel. (Cf. *People v. Marsden* [(1970)] 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44.)" (*Id*. at p. 173, 84 Cal.Rptr. 156, 465 P.2d 44.) In the analogous *Marsden* context, a defendant must be given the opportunity "'to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.'" (*People v. Fierro* (1991) 1 Cal.4th 173, 204, 3 Cal.Rptr.2d 426, 821 P.2d 1302.) "'A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or

that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" (*Ibid.*)

"Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. [Citation.] Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (*Davila v. Davis* (2017) 582 U.S. ——, ——, [137 S.Ct. 2058, 2067], 198 L.Ed.2d 603.) With these principles in mind, we turn to defendant's legal arguments.

Defendant heavily relies on his trial counsel's theory of the case, i.e., that his attempt to escape was successful the moment he crossed the threshold of the garage and entered a public area. His theories of reversible error likewise concern the prosecution's reliance on the encounter with Deputy Rodriguez on Truxtun Avenue. For example, defendant faults his appellate counsel for not challenging the trial court's ruling on a motion in limine to exclude evidence of the alleged struggle "as irrelevant and contrary to Evidence Code [section] 352."

Like his trial attorney, defendant seems to believe a completed escape precludes liability for an attempted escape. His arguments suggest a lack of familiarity with section 663. The statute provides, in relevant part: "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt ...." (§ 663.) As we have discussed, the statute "specifically permits a defendant to be convicted of the crime of attempt even if it is proved he succeeded." (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 610, 40 Cal.Rptr.3d 461.) Put differently, "the state is not barred from imposing punishment for an attempt merely because the crime has been completed." (*People v. Parrish* (1985) 170 Cal.App.3d 336, 342–343, 217 Cal.Rptr. 700.)

Any claim based on the prosecution's reliance on the Truxtun Avenue incident would ultimately be subject to the harmless error analysis we have applied to the claim of instructional error. Therefore, such claims are not "plainly stronger than those actually presented" by defendant's appointed counsel. (*Davila v. Davis, supra*, 582 U.S. at p. ——, [137 S.Ct. at p. 2067].) The same is true of defendant's suggested challenge to the sufficiency of evidence regarding the element of force.

Defendant argues "the removal of the zip tie did not and could not have assisted with the escape or an attempted escape" since he merely clung to the underside of the bus as it moved. Section 4532, subdivision (b)(2) is violated if an "escape or attempt to escape ... is committed by force or violence." An attempted escape "requires a 'direct, unequivocal act to effect that purpose.'" (*People v. Lancaster* (2007) 41 Cal.4th 50, 94, 58 Cal.Rptr.3d 608, 158 P.3d 157.) "The 'force' may be any wrongful use of force against property." (*Kunes, supra*, 231 Cal.App.4th at p. 1444, 180 Cal.Rptr.3d 896.) Accordingly, the trial evidence permitted the conclusion defendant's attempted escape involved the use of force. (See *People v. White, supra*, 202 Cal.App.3d at p. 866, 249 Cal.Rptr. 165 ["The Legislature may have ... decided it was simply too difficult to distinguish between types of force an escaping felon might use against property. The Legislature's solution ... was to create a relatively large, almost all-inclusive class, and to include those whose escapes are accomplished with a minimum amount of force against property"].)

Defendant also faults his appellate attorney for not claiming ineffective assistance

1    of counsel based on his trial attorney's failure to object to alleged misstatements of
2    law by the prosecutor during closing argument. Appellate counsel's decision not to
     present such a claim is understandable. First, "[i]t is rarely appropriate to resolve
3    an ineffective assistance claim on direct appeal." (*People v. Duff* (2014) 58 Cal.4th
     527, 550, fn. 9, 167 Cal.Rptr.3d 615, 317 P.3d 1148.) Second, "the failure to
4    object rarely establishes prejudice." (*People v. Freeman* (1994) 8 Cal.4th 450, 520,
     34 Cal.Rptr.2d 558, 882 P.2d 249; accord, *People v. Caro* (2019) 7 Cal.5th 463,
     514, 248 Cal.Rptr.3d 96, 442 P.3d 316.)
5
6    For the reasons discussed, the record does not "'clearly show[ ]'" that appellate
     counsel is "'not providing adequate representation ... or that defendant and counsel
7    have become embroiled in such an irreconcilable conflict that ineffective
     representation is likely to result.'" (*People v. Fierro, supra*, 1 Cal.4th at p. 204, 3
     Cal.Rptr.2d 426, 821 P.2d 1302.) Defendant's motion is therefore denied.
8

9    <u>Swope</u>, 2021 WL 4839224, at *6-7.

10                       a.   <u>Legal Standard Governing Ineffective Assistance of Appellate Counsel</u>

11          A habeas claim alleging appellate counsel was ineffective is evaluated under <u>Strickland</u>.

12   See <u>Williams v. Taylor</u>, 529 U.S. at 390-391.  To establish ineffective assistance of counsel,

13   Petitioner must prove: (1) counsel's representation fell below an objective standard of

14   reasonableness under prevailing professional norms, and (2) there is a reasonable probability that,

15   but for counsel's errors, the result of the proceeding would have been different.  <u>Strickland v.</u>

16   <u>Washington</u>, 466 U.S. 668, 687-694, 697 (1984).  As the high court has observed, appellate

17   counsel performs properly and competently when he or she exercises discretion and presents only

18   the strongest claims instead of every conceivable claim.  <u>Jones v. Barnes</u>, 463 U.S. 745, 752

19   (1983); <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986). "Effective appellate counsel should not raise

20   every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."

21   <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2067 (2017). "In many instances, appellate counsel will fail to

22   raise an issue because she foresees little or no likelihood of success on that issue; indeed, the

23   weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate

24   advocacy." <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989). The relevant inquiry is not

25   what counsel could have done; rather, it is whether the choices made by counsel were reasonable.

26   <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998).

27          Even if Petitioner can demonstrate his appellate attorney acted unreasonably, he must still

28   show prejudice.  <u>Smith</u>, at 285-286.  Habeas relief for ineffective assistance of counsel may only

be granted if the state court decision unreasonably applied the <u>Strickland</u> standard.  <u>Knowles v.</u>
<u>Mirzayance</u>, 556 U.S. 111, 122 (2009).

> b.  <u>Failure to Argue Petitioner's "Two Defenses" Theory and Failure to</u>
> <u>Challenge Prosecution's Ongoing Transaction Theory</u>

Petitioner faults appellate counsel for failing to argue his defense to the second struggle involving the deputy.  He claims he had two defenses: one contesting the use of force in cutting off the zip-tie; and another involving the use of force in resisting the officer.  He asserts that because he had "two defenses," the trial court should have given an unanimity instruction. Crucial to this theory was Petitioner's argument (and trial counsel's) that the escape was not an ongoing offense.  Petitioner claims appellate counsel erred by conceding that the escape was ongoing, rather than complete when the zip-tie was cut and he exited the bus barn.  He asserts that if appellate counsel properly argued that (1) there were two defenses, (2) the court erred by failing to require unanimity, and (3) the struggle should have been disallowed into evidence, then he could have been found not guilty of using violence in cutting off the zip-tie since it was unknown what use of force the jury had relied on.

The claim fails because Petitioner has not shown the state court application of <u>Strickland</u> – that Petitioner suffered no prejudice – to be unreasonable.  The state court determined that a properly instructed jury would have undoubtedly found Petitioner's conduct inside the garage established the elements of attempted escape by force.  Petitioner acknowledges: "the fact is that the petitioner did remove the zip tie to avoid detection"; he "remove[d] the zip tie so he would not shuffle while walking down the street." (Doc. 44 at 3, 11.)  He agrees with Respondent "that the sole purpose of the zip tie removal was to avoid detection after the petitioner was in the parking lot walking away from the bus." (Doc. 44 at 3.)  He agrees with Respondent that "[h]e sought to escape from their custody (deputies), to avoid prison. If recognized he was an inmate, officers would stop him from departing their custody. So he made himself appear less like an inmate." (Doc. 44 at 3.)  Thus, it is established that the zip-tie was removed to enable escape.  The appellate court determined that under California law, force used against property such as the zip-tie constitutes use of force within the meaning of Cal. Penal Code § 4532(b)(2).  This

1  determination of state law is binding on this Court.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005)

2  ("a state court's interpretation of state law" is binding on federal habeas).  The appellate court

3  thus reasonably determined that evidence of the attempted escape and Petitioner's use of force in

4  removing the zip-tie was overwhelming and uncontroverted.

5       In addition, the appellate court noted that under California law, a completed escape does

6  not preclude liability for an attempted escape.  Thus, even had appellate counsel argued that the

7  escape was complete at the time Petitioner severed the zip-tie and exited the bus barn, the escape

8  did not preclude liability for his actions after he exited the bus barn.  In other words, it did not

9  matter under state law that at some point in the timeline of events the crime of escape may have

10  been completed.  Therefore, regardless of what argument appellate counsel put forth, Petitioner

11  fails to show that there was any probability the result would have been different.  This is fatal to

12  Petitioner's claims.

13       For the same reasons, Petitioner's contention that appellate counsel could have argued his

14  separate defenses theory to show error in the introduction of evidence of the struggle with the

15  deputy as prejudicial is meritless.  Petitioner was charged with attempted escape.  The appellate

16  court determined that a completed escape did not preclude liability for attempted escape, and he

17  cannot show that an objection by counsel to the introduction of the struggle evidence would have

18  been remotely successful.  Jurors are not required to agree upon the means of commission of the

19  crime if there are more than one means, so long as they agree upon the bottom line.  McKoy v.

20  North Carolina, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) ("different jurors may be

21  persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly

22  there is no general requirement that the jury reach agreement on the preliminary factual issues

23  which underlie the verdict.").  Appellate counsel has no constitutional duty to raise every issue

24  when, in the attorney's judgment, the issue has little or no likelihood of success.  Jones, 463 U.S.

25  at 751-53; Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002).  Moreover, Petitioner cannot

26  show prejudice because evidence of the use of force on the zip tie was uncontroverted.  The jury

27  surely found true the use of force with or without also finding Petitioner used violence in his

28  attempt.

1          c.   Appellate Counsel's Decisions

2          Petitioner claims appellate counsel rendered ineffective assistance by filing a petition for

3   review against his wishes and by filing an appeal containing a frivolous claim. "The Sixth

4   Amendment does not include any right to appeal." Martinez v. Court of Appeal of California,

5   Fourth Appellate Dist., 528 U.S. 152, 160 (2000). Further, there is no "constitutional right to

6   self-representation on direct appeal from a criminal conviction." Id. at 163. Appellate counsel is

7   permitted to exercise professional judgment when determining which issues to pursue on appeal,

8   and the attorney need not advance every argument, regardless of merit, urged by the appellant.

9   Jones v. Barnes, 463 U.S. 745, 751 (1983).

10         Petitioner cannot show the violation of any constitutional right, either under the Sixth

11  Amendment right to counsel or the Fourteenth Amendment right to due process. Appellate

12  counsel was appointed to represent him, and counsel raised the issues he deemed appropriate in

13  his professional judgment as required under his appointment. Petitioner sought to remove and

14  replace appellate counsel during his appeal, but the appellate court denied his request. Likewise,

15  Petitioner cannot demonstrate a violation of his constitutional rights by counsel's inclusion of a

16  discovery claim based on Pitchess v. Superior Court, 11 Cal.3d. 531 (1974). The claim was one

17  of several claims. Counsel did not raise one frivolous claim in lieu of stronger claims. Moreover,

18  Petitioner fails to demonstrate that counsel's decision to include the claim was objectively

19  unreasonable or that there is a reasonable probability that, but for counsel's error, the result of the

20  proceeding would have been different. Strickland, 466 U.S. at 687-694, 697.

21              2.   Appeal Process

22         Petitioner also takes issue with the appeal process in his case. He contends he was denied

23  his right to present his appeal when the California Supreme Court accepted appellate counsel's

24  petition for review against his wishes. He also contends his appeal was denied based on a factual

25  error.

26         A state's procedure is constitutionally adequate "so long as it reasonably ensures that an

27  indigent's appeal will be resolved in a way that is related to the merit of that appeal." Smith v.

28  Robbins, 528 U.S. 259, 265 (2000). Here, counsel was appointed to represent Petitioner on direct

1  appeal.  Petitioner's motion to replace him during the appeal was denied.  The California

2  Supreme Court accepted the petition for review in accord with California appellate procedures.  It

3  also appears that the California Supreme Court also accepted Petitioner's own filings.  Petitioner

4  fails to show the violation of any constitutional right by the California Supreme Court's

5  acceptance of the petition for review.

6          Petitioner also claims the appeal process was faulty because the appellate court based its

7  opinion on a factual error, to wit, the failure to recognize Petitioner's "two defenses."  The

8  appellate court, however, resolved the issue of Petitioner's "two defenses" against him.  The court

9  determined that the two events involving the zip tie and the struggle could comprise the elements

10  of force and violence for purposes of aggravated attempted escape.  Petitioner's assertion that the

11  series of events should have been severed was rejected by the state court.  The state court's

12  determination of what constitutes the elements of the offense are binding on this Court.

13  Bradshaw, 546 U.S. at 76.

14                          3.  Alleged Illegal or Improper Theory

15          Finally, Petitioner contends he was convicted on an illegal or improper theory.  This claim

16  was already addressed within the context of appellate counsel's alleged ineffectiveness.

17  Petitioner believes he was convicted on an "improper theory" when he was convicted based on

18  the struggle that occurred after the completed escape.  He contends the struggle with the deputy

19  was improperly introduced because the escape had already been completed when he left the bus

20  barn.  Petitioner seeks to sever the events into two separate crimes: one a completed escape; and

21  the other, at most, a crime of resisting arrest.  As previously discussed, Petitioner's theory was

22  rejected by the state court.  Under California law, a completed escape does not preclude liability

23  for the crime of attempted escape.  Thus, the appellate court determined that the charged offense

24  of attempted escape by force or violence comprised the entire series of events from Petitioner's

25  actions in the bus barn to his capture by deputies.  The state court's determination of what

26  constitutes the elements of attempted escape by force or violence is binding.  Bradshaw, 546 U.S.

27  at 76.  In addition, as already discussed, Petitioner fails to demonstrate that the state court was

28  objectively unreasonable in rejecting the claim as harmless regardless of the alleged error,

1   because evidence of force used with the zip tie in his attempted escape was uncontroverted.

2   **IV.     CERTIFICATE OF APPEALABILITY**

3          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

4   district court's denial of his petition, and an appeal is only allowed in certain circumstances.

5   Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).  The controlling statute in determining

6   whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

7          (a)     In a habeas corpus proceeding or a proceeding under section 2255 before a district
           judge, the final order shall be subject to review, on appeal, by the court of appeals for the
8          circuit in which the proceeding is held.

9          (b)     There shall be no right of appeal from a final order in a proceeding to test the
           validity of a warrant to remove to another district or place for commitment or trial a
10         person charged with a criminal offense against the United States, or to test the validity of
           such person's detention pending removal proceedings.
11
           (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may
12         not be taken to the court of appeals from—

13                 (A) the final order in a habeas corpus proceeding in which the detention
                   complained of arises out of process issued by a State court; or
14
                   (B) the final order in a proceeding under section 2255.
15
           (2) A certificate of appealability may issue under paragraph (1) only if the applicant has
16         made a substantial showing of the denial of a constitutional right.

17         (3) The certificate of appealability under paragraph (1) shall indicate which specific issue
           or issues satisfy the showing required by paragraph (2).
18

19         If a court denies a petitioner's petition, the court may only issue a certificate of

20   appealability when a petitioner makes a substantial showing of the denial of a constitutional right.

21   28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that

22   "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

23   been resolved in a different manner or that the issues presented were 'adequate to deserve

24   encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting

25   Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

26         The Court finds that Petitioner has not made the required substantial showing of the denial

27   of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists

28   would not find the Court's determination that Petitioner is not entitled to federal habeas corpus

relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court declines to issue a certificate of appealability.

**V.      ORDER**

Based upon the foregoing, the Court **ORDERS**:

1.      The petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

2.      The Clerk of Court is directed to enter judgment and close the case.

3.      The Court **DECLINES** to issue a certificate of appealability.

This order terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   **July 19, 2024**                    _/s/ Sheila K. Oberto_
                                    UNITED STATES MAGISTRATE JUDGE